IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Reuben Jackson, | ) C/A No. 0:08-894-TLW-PJG |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) |
| Defendant. | ) |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Reuben Jackson ("Jackson"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On June 16, 2004, Jackson applied for SSI and DIB. Jackson's applications were denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 6, 2006 at which Jackson appeared and testified and was represented by counsel. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated November 14, 2006 finding that Jackson was not disabled because Jackson remains able to perform work found in the national economy.

Jackson was forty-four years old at the time of the ALJ's decision. He has a twelfth-grade education and past relevant work experience as a laborer, slice operator, and produce stocker. (Tr. 97, 101.) Jackson alleges disability since August 30, 2001 due to an injury where his left hand was

crushed, gout, degenerative disc disease, hypertension, residuals of a myocardial infarction, and headaches. (Tr. 22, 50.)

The ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since August 30, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: residuals of a left hand crush injury, gouty arthropathy of the feet, L4-5 degenerative disc disease with small extrusion, and hypertension (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work with the restrictions of no lifting or carrying over 10 pounds occasionally; no standing and/or walking over 4 hours in an 8 hour workday; only occasional stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; never climb ladders or scaffolds; no foot pedals or other controls with either lower extremity; and an environment free from temperature extremes.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on August 13, 1962 and was 39 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work was unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a "disability," as defined in the Social Security Act, from August 30, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-27.)

On February 28, 2008, the Appeals Council denied Jackson's request for review, making the decision of the ALJ the final action of the Commissioner. Jackson filed this action on March 17, 2008.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUES**

Jackson raises two issues for this judicial review, alleging that the ALJ erred in: (1) making a finding that the claimant can perform other work when the vocational expert's testimony contradicts this finding and (2) failing to evaluate all of the claimant's limitations in determining his residual functional capacity. (Pl.'s Br. at 5, Docket Entry 14.)

**DISCUSSION**

**A.     Testimony of the Vocational Expert**

Jackson first contends that the vocational expert's testimony contradicted the ALJ's finding that Jackson can perform work. Specifically, Jackson asserts that the ALJ erroneously determined that a limitation requiring Jackson to rest away from his work station for an hour per day could be accommodated by normal permissible work breaks in the workforce. Jackson argues that the ALJ's finding contradicted the testimony of the vocational expert that this limitation would render Jackson unable to work.

Dr. Chandler Todd, a treating physician of Jackson, and Dr. Glenn Scott, an orthopedic surgeon who examined Jackson once, completed questionnaires regarding Jackson's limitations. These were considered by the ALJ. In response to one of the questions in the questionnaire, Drs. Todd and Scott separately stated that Jackson would have to rest away from the work station *more* than one hour in an eight-hour work day. (Tr. 217, 281.) In fact, Dr. Todd hand wrote on his questionnaire that Jackson would have to rest "[a]t least more than 1 hour." (Tr. 281.) The Commissioner contends that the ALJ rejected the responses to the questionnaires to the extent that

they were inconsistent with the record.[1] (Def.'s Br. at 8, Docket Entry 20.) However, the Commissioner does not direct the court to any particular statement in the ALJ's decision to support this assertion.

In the ALJ's discussion of Dr. Todd's and Dr. Scott's opinions, he summarized this limitation as requiring resting for one hour away from the work station. (Tr. 24.) The ALJ did not state that the doctors indicated Jackson would require *more* than one hour of rest. Further, in discussing Dr. Scott's opinion, the ALJ determined that a limitation of one hour of rest "can be accommodated by normal allowed work breaks in the workforce." (Tr. 24.) Therefore, whether Jackson requires resting for one hour away from his workstation or more than one hour may be a critical distinction.

During the hearing, Jackson's counsel asked the vocational expert to consider that Jackson was restricted to sedentary work and included a further limitation that Jackson "would have to rest away from the work station more than an hour during the working portion of the workday."[2] (Tr. 379.) The vocational expert responded by stating that the jobs he previously identified as being available permitted a thirty-to-forty-five minute lunch break and two ten-to-fifteen-minute breaks.

---

[1] The Commissioner further argues that neither Dr. Todd's nor Dr. Scott's clinical notes indicate that Jackson needs to take breaks of over an hour from his work station and, therefore, these opinions should be afforded less weight. However, this justification is not expressed by the ALJ. As such, this argument constitutes post hoc rationalization of the ALJ's decision, which is generally not permitted. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steel v. Barnhart, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

[2] It appears that Jackson's counsel based this line of questioning on the above discussed questionnaires completed by Drs. Todd and Scott. These exhibits were submitted to the ALJ at the start of the hearing and there is no indication that he was able to review these prior to the questioning of the vocational expert. (Tr. 346, 379.)

Counsel followed up by asking, "So, this would be more than an hour during the working portion of the workday." (Id.) The vocational expert responded in the affirmative. The ALJ then asked the vocational expert to assume that Jackson needed at least one hour of unscheduled rest and that his break could not follow the time set by the lunch or other break times. In response, the vocational expert agreed that Jackson could not work. (Tr. 380.) Counsel then asked the vocational expert to assume that Jackson required more than an hour and stated, "He's only allowed an hour so, if it was more than that[,] it would also not be acceptable." (Id.) In response, the vocational expert stated, "Correct." (Id.)

The ALJ found that "the restrictions and limitations, proposed to the vocational expert by the claimant's representative, are not substantiated by the total evidence of record including the objective medical evidence; therefore, the vocational expert's answers to those questions are not material to the outcome of this case." (Tr. 27.) However, there is no further discussion by the ALJ pertaining to this limitation. Based on the ALJ's earlier discussion of Dr. Todd's and Dr. Scott's opinions, it appears that the ALJ recognized a resting limitation, but concluded that it could be accommodated by normal breaks. However, both of the doctors specifically indicated that Jackson required *more* than a one-hour break away from his workstation. Accordingly, the ALJ's finding that Jackson required one hour away from his work station—a time period which could be accommodated by normal allowed work breaks in the workforce—appears to be contrary to the only evidence submitted on this point. Consequently, this court cannot say that the ALJ's finding that this limitation could be accommodated is supported by substantial evidence.

Therefore, this matter should be remanded to the Commissioner to consider this limitation—whether Jackson requires *more than* one hour away from the work station—and whether it affects Jackson's residual functional capacity to the extent that he is disabled.

PJG

B. **Residual Functional Capacity**

Jackson also contends that the ALJ failed to take into account all of Jackson's limitations in arriving at his residual functional capacity ("RFC") determination. Specifically, Jackson asserts that his RFC as determined by the ALJ is incomplete and inaccurate because the ALJ (1) discounted and ignored limitations imposed by Jackson's treating and examining physicians and (2) found Jackson not credible based upon irrelevant factors. The ALJ concluded that Jackson retained the RFC

> to perform sedentary work with the restrictions of no lifting or carrying over 10 pounds occasionally; no standing and/or walking over 4 hours in an 8 hour workday; only occasional stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; never climb ladders or scaffolds; no foot pedals or other controls with either lower extremity; and an environment free from temperature extremes.

(Tr. 23.)

An RFC "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

Jackson alleges that the ALJ erred in evaluating Jackson's limitations regarding (1) elevating his feet, (2) use of a cane, (3) his absences from work, (4) manipulation, and (5) his subjective complaints of pain.

1. **Elevation of feet**

In response to a question in the questionnaire that asked "[i]f Reuben Jackson attempts to work on an 8 hour day, 5 day per week basis, during the working portion of the work day, (s)he would most probably have to elevate his/her legs above the waist," Drs. Todd and Scott separately

responded "less than one hour."[3] (Tr. 217, 281.) The ALJ discussed these responses in his decision. (Tr. 24.) The ALJ discounted Dr. Todd's opinion based on his finding that there was no indication that Dr. Todd ever told Jackson to elevate his feet on a daily basis, and that Dr. Todd stated that he based his opinions in part on a functional capacity evaluation ("FCE") that did not take place. In evaluating Dr. Scott's opinion, the ALJ determined that this restriction could be accommodated during normal breaks.

Jackson argues that the ALJ erred in discounting Dr. Todd's opinion and in omitting this limitation from the hypothetical to the vocational expert. Jackson asserts that even though Dr. Todd's medical notes do not indicate that he told Jackson to elevate his feet, elevation is a common treatment for gout and, therefore, it is likely that Dr. Todd advised Jackson of this. Further, Jackson points out that even though previous attempts to perform the evaluation failed, the FCE did take place prior to the date on Dr. Todd's questionnaire. (Tr. 170, 300-05, 307.)

Even if the ALJ erred in discounting Dr. Todd's opinion on these grounds, such an error would be harmless because the ALJ expressly considered this limitation in evaluating Dr. Scott's opinion. The ALJ did not reject this limitation; rather, it appears that the ALJ found that this is not a limitation that credibly restricted Jackson's RFC. The ALJ stated that a limitation requiring Jackson to elevate his feet for less than an hour during the day could be accommodated by "normal allowed work breaks in the workforce." (Tr. 24.)

As stated above, Jackson also argues that this limitation was erroneously omitted from the hypothetical question presented to the vocational expert. "In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the

---

[3]Notably, the only options were: "Less than an hour", "More than an hour", or "More than 2 hours."

expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). However, there is no requirement that a hypothetical question contain a "function-by-function" assessment, as required when formulating RFC; rather, the governing standard is only that the hypothetical include all of the claimant's *credible* impairments. Compare SSR 96-8p (explaining in its purpose that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis") with Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*") (emphasis in original); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted). Accordingly, if the record does not support the existence of a limitation, the ALJ need not include it in the hypothetical question. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). The court finds that there is substantial evidence in the record to indicate that the ALJ properly considered this limitation in determining Jackson's RFC and in formulating his hypothetical question for the vocational expert.

   **2.    Use of a Cane**

Jackson contends that the ALJ erred in rejecting Jackson's assertion that he needs a cane to walk. The ALJ stated in his decision that Jackson's use of a cane to ambulate "appears to be [of] his own preference rather than clinical deficits with the record showing that he is independent in sitting, standing, and getting on/off the examination table." (Tr. 24.) This statement appears to have

PJG

been made in discounting Dr. Todd's questionnaire response that Jackson needs to elevate his feet less than an hour during the workday. However, Dr. Todd noted when discussing Jackson's medical problems in a letter dated February 6, 2006 that Jackson's "medical problems include Hypertension, Gout, and Chronic Back Pain with difficulty in walking requiring his use of a cane." (Tr. 170.) Several of Jackson's medical records, while not expressly stating that the doctor ordered Jackson to use a cane, indicate that Jackson ambulates with the assistance of a cane. (See Tr. 173, 188, 258, 264, & 272.) In the treatment notes from one of those medical records, Dr. Todd indicated that Jackson's gout had not worsened and that Jackson "still feels like he needs to walk with a cane." (Tr. 252). When Dr. Scott examined Jackson in August 2006, he noted that Jackson "ambulates with the use of a cane but is independent in sitting, standing, and moving on and off the exam[in]ing table," thus differentiating the use of a cane for sitting and standing from walking. (Tr. 215). While there was evidence in the record to support, as well as undermine, the ALJ's statement that the use of the cane appears to be preferential rather than clinically required, the ALJ specifically found that Jackson's gout "is improved with medications and may require use of [an] assistance device (cane) to ambulate but [] does not interfere with sitting, standing and getting on/off the examination table." (Tr. 26.) This statement is supported by substantial evidence. Moreover, even if the ALJ erred in stating that Jackson's cane use was preferential in discounting Dr. *Todd's* indication that Jackson should elevate his feet for less than an hour, as discussed in the previous section, the ALJ properly evaluated that limitation when considering the identical limitation imposed by Dr. *Scott*.

Moreover, upon questioning, the vocational expert stated that needing a cane would have no effect on the sedentary jobs that he found Jackson could perform. (Tr. 381.) While SSR 96-9p states that "the occupational base for an individual who must use [a hand-held assistive devise] for balance because of significant involvement of both lower extremities . . . may be significantly eroded," there

is no indication that the vocational expert's statement was erroneous. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's decision that the plaintiff was not disabled where the hypothetical to the vocational expert included all limitations that were supported by the record as a whole). Accordingly, there is substantial evidence in the record to indicate that the ALJ properly considered this limitation in determining Jackson's RFC and included this limitation in the hypothetical question presented to the vocational expert.[4]

### 3. Frequency of Work Absence

In responding to the questionnaire, both Drs. Todd and Scott stated that Jackson would be absent from work, on average, more than three days each month. (Tr. 217-18, 281-82.) Jackson argues that the ALJ erred in evaluating this limitation. Specifically, Jackson argues that the ALJ rejected Dr. Todd's determination in part because Dr. Todd cited an FCE that the ALJ erroneously states never took place. (Tr. 24.) As stated above, the record indicates that, while previously scheduled FCEs did not take place, the FCE did occur prior to Dr. Todd's responding to the questionnaire. (Tr. 300, 170, 307.) Jackson further points out that the ALJ failed to even mention that Dr. Scott indicated this same limitation.

The ALJ's decision reflects that he rejected Dr. Todd's determination not only due to Dr. Todd's consideration of the FCE. He also rejected it based on medical notes that indicate that

---

[4]Jackson also argues that the ALJ erred in finding that Jackson's gout affects only one foot at a time because this is inconsistent with the record. Upon review of the decision, the ALJ stated that Jackson's gout "is confined to his feet (usually one at a time)." (Tr. 25.) Not to delve in to semantics, but "usually" and "only" have two distinct meanings and connotations. The ALJ specifically found that Jackson has "gouty arthropathy of the *feet*." (Tr. 22, 23); (see also Tr. 26 (stating that Jackson has "gout (confined to the feet)"). There is no indication that the ALJ determined that only one of Jackson's feet is affected by gout or that the ALJ's statement in one sentence in the opinion that it "usually" affects one at a time is not supported by substantial evidence.

Jackson's gout was improving, and the fact that since November 2005, Jackson experienced one flare up lasting three to four days in April of 2006, during which he retained full range of motion in the upper and lower extremities and had no sensory deficits. (Tr. 24.) The ALJ further noted that Jackson has "reported improvement of his pain . . . and was persistently described as 'in no acute distress.'" Finally, the ALJ indicated that Jackson reported occasional back pain, but was treated conservatively. For these reasons, the ALJ rejected the opinion of Dr. Todd that Jackson will miss more than three days of work each month. However, the ALJ found that Jackson suffered from multiple severe impairments including: "residuals of a left hand crush injury, gouty arthropathy of the feet, L4-5 degenerative disc disease with small extrusion, and hypertension." (Tr. 22.) He further found that Jackson's gouty arthropathy flares up every three to four months, and lasts up to three weeks. (Tr. 23.)

While the ALJ rejected Dr. Todd's opinion that Jackson would miss an average of three days per month, he did not mention that Dr. Scott indicated this same limitation. The evidence of record shows that Jackson would frequently miss work due to his impairments. Further, the vocational expert testified that the jobs he identified would only allow an employee to miss ten days per year. (Tr. 381.) Therefore, the frequency of Jackson's absences is material to whether Jackson is disabled. Even if there is substantial evidence to conclude that Jackson may not miss as many as three days per month (or 36 days per year), if Jackson only missed one day per month or three days every three months (or 12 days per year), he would still exceed the allowable days permitted by the jobs identified by the vocational expert. Therefore, the court cannot say that the ALJ's conclusion that Jackson would not miss more work than allowed in the jobs he can perform is supported by substantial evidence. Accordingly, this issue should be remanded to the Commissioner to address

*PJG*

Dr. Scott's restriction and to determine whether the number of absences reasonably to be expected as a result of Jackson's impairments would render him disabled.

4.  **Manipulative Limitations**

Jackson contends that the ALJ erred in assessing Jackson's manipulative limitations. The ALJ concluded that Jackson has "slightly diminished grip strength (4/5) of the left (non-dominant) hand but with full closing motion and intact sensation." (Tr. 26.) Jackson relies on Dr. Scott's and Dr. Ramseur's findings in support of this contention; however, there is conflicting evidence in the record on this issue. Dr. Scott found that Jackson could only *occasionally* perform gross and fine manipulations, and writing or typing-type activities, (Tr. 217), while Dr. Todd indicated that Jackson could *frequently* perform fine and gross manipulation (Tr. 281). Dr. Ramseur, the examining agency consultant, found in 2004 that Jackson's "[m]otor exam is abnormal in the left grip with decreased gross function at 4/5 and also some decreased fine function," as well as "decreased sensation of the left hand, both dorsal and palmar surfaces at about 50%." (Tr. 160.)

The ALJ found that Dr. Scott's findings were "out of proportion to clinical findings showing slightly diminished grip strength in the left hand with full closing motion upon repeated examination, full motor strength and range of motion in the right (dominant hand), and good mobility bilaterally in the shoulders, elbows, and wrists." He also gave Dr. Scott's opinion less weight, as it was a one-time examination. (Tr. 24.) The ALJ further determined that the opinions of the agency consultants, which included Dr. Ramseur, could not be afforded significant weight, as new evidence was submitted concerning material facts regarding Jackson's medical condition that was not available for the agency consultants' review. (Tr. 26.) Dr. Todd, who was one of Jackson's regular treating physicians, found that Jackson could frequently perform fine and gross manipulation; accordingly,

there is substantial evidence supporting the ALJ's RFC determination regarding Jackson's manipulative limitations.

Jackson also contends that the ALJ failed to explain how an impairment rating of 22% of the left hand is compatible with a finding of no limitations. This impairment rating was determined in April of 1998 after Jackson had reached his maximum medical improvement following his left hand "crush" injury. (Tr. 221.) The ALJ noted that Jackson had "slightly diminished grip strength (4/5) in the left (non-dominant) hand." However, the ALJ noted that Jackson continued to work as a slicer until 2001 and that his medical records do not demonstrate frequent left hand complaints.[5] (Tr. 23.) Accordingly, the ALJ's finding with regard to manipulative limitations is supported by substantial evidence.

### 5. Jackson's credibility

In light of the court's determination that some of the ALJ's conclusions regarding Jackson's limitations are not supported by substantial evidence, the Commissioner should also reconsider Jackson's credibility on remand. In evaluating subjective complaints of pain, the Fourth Circuit Court of Appeals has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). After that

---

[5]The ALJ also noted that Jackson continued working as a stocker until 1991; however, his hand injury did not occur until 1997, so Jackson's ability to work as a stocker until 1991 is irrelevant in assessing his limitations with respect to his left hand following this injury.

threshold requirement has been met, the ALJ must expressly consider "the intensity and persistence of the claimant's pain and the extent to which it affects [his] ability to work" Id.

In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Id.

The court cannot determine from the record whether the ALJ properly evaluated Jackson's subjective complaints of pain. Accordingly, this issue should be remanded as well.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision, as it pertains to Jackson's limitations requiring rest away from the work station and the frequency of his work absences, is not supported by substantial evidence. Therefore, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action to (1) consider Jackson's rest limitation—whether Jackson requires *more than* one hour away from the work station—and

whether it affects Jackson's residual functional capacity to the extent that he is disabled; (2) to address Dr. Scott's work absences restriction and to determine whether the number of absences reasonably to be expected as a result of Jackson's impairments would render him disabled; and (3) to reconsider Jackson's credibility in light of the issues on remand.

                                          _____
                                          Paige J. Gossett
                                          UNITED STATES MAGISTRATE JUDGE

July 14, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).